MEAD (YAW v.). See Case No. 18,129.

## Case No. 9,369.

### In re MEADE.

[See Case No. 9,372.]

## Case No. 9,370.

### In re MEADE.

[19 N. B. R. 335.] [1]

District Court, S. D. New York. April 22, 1879.

BANKRUPTCY — PETITION TO VACATE ADJUDICATION — FRAUD — KNOWLEDGE THEREOF — LACHES — REPEAL OF ACT.

1. A creditor seeking to vacate an adjudication must make his application with due diligence on being informed of the facts, and even slight want of diligence is in such case imputed as laches and forfeits his claim to the aid of the court.

2. From the time creditors first receive notice of an adjudication they are put upon inquiry as to any matters in which it may affect their interests and which can be readily discovered by them, and if they make no inquiries and do nothing, it is evidence of acquiescence on their part.

3. In June, 1878, the bankrupt was adjudicated by consent in involuntary proceedings. In March, 1879, a petition was filed by a creditor who had recovered judgment and had a receiver appointed before the filing of the said petition in bankruptcy to vacate the adjudication on the ground of fraud and collusion; that the paper, suspension of which was alleged as the act of bankruptcy, was not made or passed in the bankrupt's business as a trader; that the petitioning creditors swore to the petition without knowing its statements to be true; that the greater part of their claims were fictitious; and that they did not constitute the requisite number and amount. It appeared that the petitioner did not prove her claim, but that she combined with other creditors and contributed money to pay the expenses of a re-examination of the proof of debt by one of the petitioning creditors and that she had been admitted to and did oppose an application of the bankrupt for a discharge. Held, that her actions in the proceeding estopped her from any claim of right to make this application; that she was guilty of laches, especially so as she waited until after the repeal of the bankrupt law of 1867 (14 Stat. 517), and thereby prevented the bankrupt from going into voluntary bankruptcy. In August, 1878, she had prepared a petition, but abandoned it because she had not then sufficient proof of the facts.

4. This did not excuse the delay; she should have made immediate application, and, if necessary, should have applied for such examination of the parties and such taking of testimony as was necessary for eliciting the truth.

[In the matter of Abraham Meade, a bankrupt.]

Coleridge E. Hart, for petitioner.

Wheeler H. Peckham and P. W. Ostrander, contra.

CHOATE, District Judge. This is an application of a creditor of the bankrupt to set aside the adjudication. On the 19th of June, 1878, a petition was filed against the bankrupt signed by six persons alleging themselves to be at least one-fourth in number

and one-third in value of all the creditors of Meade, and alleging as an act of bankruptcy the suspension for forty days of his commercial paper, made in his business as a trader, and praying that he be adjudicated a bankrupt. On the return-day of the order to show cause, June 29, 1878, Meade appeared, and upon his filing a written consent thereto he was adjudicated a bankrupt.

This application to vacate the adjudication is made upon the petition of Elizabeth L. Hart, a creditor of said bankrupt, who recovered a judgment against him in March, 1878, for two thousand and eighty-six dollars. The petition now presented was filed March 12, 1879. The grounds upon which this relief is sought are fraud and collusion between the bankrupt and the petitioning creditors in procuring the adjudication; that the bankrupt was not in fact a trader; that the paper, the suspension of the payment of which constituted the alleged act of bankruptcy, was not made or passed in the course of his business as a trader; that the petitioning creditors, and especially three of them, swore to the petition without knowing that Meade was a merchant or trader within the meaning of the bankrupt law; that the greater part of the alleged claims of the petitioning creditors were fictitious, and that they did not constitute in fact one-third in value of the creditors of said Meade; and especially that the said claim of James C. Meade, one of the petitioning creditors, whose claim is stated at thirty-four thousand dollars, and constituted about one-third of the aggregate claims of the petitioning creditors, and which was necessary to make up the one-third in value of all the debts, was wholly fictitious; that the petition was prepared and filed collusively and fraudulently between the bankrupt and the petitioning creditors, who were relatives and friends of his family, to obtain a discharge without paying any part of his debts, and with intent on the bankrupt's part to defraud the petitioner, Mrs. Hart, of the result of her diligence in obtaining a judgment and an appointment of a receiver of Meade's property, which had been obtained in proceedings supplementary to her judgment the day before the petition in bankruptcy was filed; that the bankrupt knew that he had not committed an act of bankruptcy when he consented to the adjudication and permitted the court to be misled by the false averments of the petition.

Notice of this application having been given to the bankrupt and the petitioning creditors, and also to all known creditors of the bankrupt, the petitioning creditors and the bankrupt appeared and answered, denying the alleged frauds and false statements, and some of the other creditors appeared and offered no objection to the vacating of the adjudication; other creditors did not appear.

By the papers accompanying this petition, and in which, together with the petition, this application is made, it appears that the peti-

tioner procured the appointment of a receiver of the property of the bankrupt by a state court in proceedings supplementary to her execution, and he gave bond and was duly qualified as such receiver, June 18, 1878; but that no assets have come to his hands, and that the receivership secures but a small part, if any, of her debt; that the petitioner, Mrs. Hart, has never proved her debt; that at the first meeting of creditors, July 19, 1878, objection was made by other creditors to the proof of James C. Meade's claim, and he was not allowed to take part in the election of an assignee; that a re-examination of his claim was demanded, and has been ever since proceeding before the register; that though this petitioner did not prove her claim, because she believed that her receivership gave her security on the debtor's property, yet that she entered into a combination with other creditors to defeat in the bankruptcy proceedings the claim of James C. Meade as fictitious, contributing the money to pay the expenses of this re-examination of James C. Meade's proof of debt; that an application by the bankrupt for his discharge has been opposed by this same combination of creditors, including the petitioner, who has obtained a special order of the court permitting her to appear therein and file specifications. These proceedings have involved very protracted examinations, at a large expense to the parties interested; that in August, 1878, this petitioner prepared a petition similar to her present petition, asking the setting aside of the adjudication on substantially the same grounds as are now urged, but abandoned it because she was advised that she had not at that time sufficient proof of the facts alleged to proceed with it successfully. The bankrupt and the petitioning creditors insist that the petition should be dismissed, on the ground that upon her own petition and accompanying papers she is not entitled to relief. This motion must be granted. The power of the court to vacate its own decree, which has been procured by fraud and deceit, either upon the motion of any party interested in having it set aside, or on its own motion when the facts are properly brought to its attention, cannot be doubted. But the power is one to be exercised cautiously, with a due regard to the interests of all parties who may be injuriously affected thereby, and especially to the rights and interests of any parties who may have relied on the decree as valid and be injuriously affected by its being vacated. In other words, the application is one made to the sound discretion of the court under all the circumstances. In re Court [Case No. 3,284]; In re Griffith [Id. 5,820]; In re Funkenstein [Id. 5,158], and cases cited; In re Lalor [Id. 8,001].

As regards the parties who may apply for such relief, it must appear that they have made the application with diligence on being informed of the facts; and even slight want of diligence is in such a case imputed as

laches, and forfeits their claim to the aid of the court. Such delay is regarded as virtual acquiescence in the decree, so far as it affects them. Same cases; also, In re Thomas [Case No. 13,891]; In re Neilson [Id. 10,090]. In this case the petitioner has, through the co-operation and under the names of other creditors who personally appeared, actively taken the benefit of the decree now sought to be set aside, and also more recently in her own name endeavored, by proceedings in the due course of the bankrupt law, to obtain relief only attainable under and by virtue of the decree of adjudication as a valid judgment. This clearly estops her from any claim of right to make this application. It also appears clearly that early in August, 1878, she was fully aware of all the facts now relied on as the ground of this application. It was clearly incumbent on her, if she intended ever to proceed to set aside the adjudication, to make immediate application to the court, and if not yet in possession of all the evidence essential to her case, she should have applied to the court for such examination of the parties and such taking of testimony as was necessary for eliciting the truth. Instead of this, she has in fact proceeded under the adjudication for relief wholly inconsistent with the vacating of the decree.

Clearly no case is made which calls on the court of its own motion to vacate the decree. If erroneous, it has been acquiesced in by creditors by their inaction and failure seasonably to move to set it aside. Even their ignorance of the facts at this late day could not excuse their inaction, for, from the time creditors first receive notice of an adjudication, they are put upon inquiry as to any matters in which it may affect their interests, and which can readily be discovered by them, and if they make no inquiries and do nothing, it is evidence of acquiescence on their part. In this case, the decree has been made the basis of long and expensive litigation, all of which will be utterly without result if the decree shall be vacated. This renders it improper to disturb the decree, if originally procured by false suggestion. As to one of the principal grounds on which it is attacked—the alleged fictitious nature of the claims of the petitioning creditors—this petitioner and all other creditors have also full and adequate relief without vacating the decree, because if this fact is proved it bars the bankrupt's discharge, since he must have known the fact and did not disclose it. As to the other ground, that there was in fact no act of bankruptcy, the alleged bankrupt not being a "trader" within the meaning of the bankrupt law [of 1867 (14 Stat. 517)], the suggestion on behalf of the bankrupt is, I think, entitled to great weight: that if at any time before the repeal of the bankrupt law, September 1, 1878, this application had been made, he could have gone into voluntary bankruptcy, and that the petitioner, though knowing or having ample means to ascertain the fact, has waited till it is too late for him to take the benefit of the bankrupt law at all. The same suggestion is properly made also in respect to those of the petitioning creditors who are not directly charged with fraud, but only with carelessly joining in a petition, not knowing that its averments were true. It is observable that the petition does not allege that they did not believe that this averment of the act of bankruptcy was true, or that they knew that it was false; and however such carelessness is to be censured it seems to me that the petitioning creditors, who presumably had an interest in the adjudication of their debtor under the bankrupt law, have not forfeited thereby all title to consideration, and as to them and their interests this petitioner has been guilty of gross laches in not moving before the repeal of the bankrupt law.

I have gone thus at length into the reasons for dismissing this petition. not because I have entertained any doubt on the question, but because of the great diligence and earnestness with which the case of the petitioner has been presented to the court by the petitioner's counsel. Petition dismissed.

[For subsequent proceedings in this litigation, see 14 Fed. 287; 109 U. S. 230, 3 Sup. Ct. 129.]